IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | | |
|---|---|---|
| CHARMAINE ELVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | REQUEST FOR JURY TRIAL |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF JOHNSON, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATTHEW FLETCHER, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BETH JOHNSON, in her official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Serve: The Board of County | Serve:  Matthew Fletcher | Serve:  Beth Johnson |
| Commissioners of | 700 SW Jackson, Suite 1100 | 10501 Lackman Road |
| The County of Johnson: | Topeka, KS 66603 | Lenexa, KS 66219 |
| Penny Postoak Ferguson, | | |
| County Manager | | |
| 111 S Cherry Street, Suite 3300 | | |
| Olathe, KS 66061 | | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Charmaine Elven, and for her claims against the above-named Defendants, alleges and states as follows:

1.    Plaintiff was at all times set forth below a resident of Kansas.

2.    Defendant The Board of County Commissioners of the County of Johnson ("Defendant County") is a political subdivision (municipality) of the State of

Kansas, organized under the laws of Kansas, with its county seat in Olathe, Kansas.

3.     Defendant Matthew Fletcher was, at relevant times at issue in this lawsuit, the Deputy Director for Johnson County Developmental Supports of Defendant County.

4.     Defendant Beth Johnson was, at relevant times at issue in this lawsuit, the Director of Day and Employment Services for Johnson County Developmental Supports of Defendant County.

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Counts II-VI of Plaintiff's Complaint each arise under the laws of the United States, specifically 42 U.S.C. § 1983.

6.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count I of Plaintiff's Complaint, as that count is so related to the claims encompassed within the other Counts as to form one case or controversy.

### FACTS COMMON TO ALL COUNTS

7.     Plaintiff was hired by Defendant County in approximately April 2015.

8.     Plaintiff was employed as a Community Employment Specialist at the Johnson County Developmental Supports (JCDS).

9.     Plaintiff's job duties including serving as the Team Leader for Project SEARCH, which strives to offer education and vocational training to individual with intellectual and development disabilities.

10.     Plaintiff worked as a non-exempt employee, and was required to submit timecards showing hours Plaintiff had worked for each week.

11.     Plaintiff's supervisor, Kim Perry, the Team Leader for Day and Employment

Services, had to approve all time entries before Plaintiff would be compensated for that time.

12.     In Perry's absence, Defendant Johnson would approve all time entries—including overtime—before Plaintiff would be compensated for that time.

13.     Between April 2015 and January 2018, Plaintiff worked substantial overtime.

14.     At no time prior to January 31, 2018 did Perry, Defendant Johnson, or any employee of Defendant County ask Plaintiff about her overtime hours worked.

15.     Plaintiff would often use a laptop computer provided by Defendant County to complete tasks.

16.     Some of these tasks were completed at Plaintiff's home.

17.     In late 2017, Plaintiff began to notice several troubling issues at JCDS.

18.     In one instance, Plaintiff arrived for her shift to find a client pounding on the wall of his room in an attempt to get assistance.

19.     Plaintiff asked the night staff if something was wrong with the client.

20.     The staff remarked that, "I dunno, he's been doing that for over an hour."

21.     Plaintiff entered the client's room to find that the client had defecated and urinated on himself.

22.     The client was pounding the wall in an attempt to get someone's attention for assistance in cleaning himself.

23.     Plaintiff apologized to the client and helped him to get clean.

24.     Plaintiff reported the occurrence to Senior Direct Support Professional, as well as Melissa Athey and Chris Goff.

25.     To Plaintiff's knowledge, no investigation was under taken nor any corrective measures implemented to prevent similar occurrences.

26.     Plaintiff also complained that narcotic medications that were at the JCDS 54th Terrace location were not being properly stored, including a lack of any lock on the medications.

27.     Some narcotic medications ultimately came up missing at the 99th Terrace Home.

28.     Plaintiff reported the missing medications to her supervisors and the medical staff at JCDS.

29.     However, after Plaintiff's report, Plaintiff did not observe any changes in how the narcotic medications were stored or secured.

30.     On or about December 7, 2017, Plaintiff was working in the office at JCDS.

31.     The office had several medical files, which contained confidential medical and personal information of several clients of the JCDS.

32.     Some of this information is protected by the Health Insurance Portability and Accountability Act (HIPAA).

33.     During her shift, an unknown individual opened the door to the office.

34.     Plaintiff was startled, as the door was supposed to be locked to prevent unauthorized individuals from accessing the room, as well as the confidential information stored therein.

35.     Plaintiff examined the door, and found that it did not even have a functioning lock.

36.     Plaintiff also learned that court was being held in the same building as the

JCDS office.

37.     Several individuals reporting to court for criminal cases began knocking on the office door, with some opening the unlocked door.

38.     Plaintiff learned that, despite court being held in the building, no additional security was present.

39.     Plaintiff contacted Perry to report these incidents and request that a working lock be installed on the door to protect the confidential information, as well as the JCDS staff and clients.

40.     Plaintiff also noted that the door needed to be secured to protect the staff and clients of JCDS.

41.     Perry brushed off Plaintiff's complaints.

42.     Perry told Plaintiff, "I'm sure this will all blow over and get fixed eventually."

43.     Plaintiff was put off by this comment, as she did not want anything to "blow over"; Plaintiff wanted the issue corrected.

44.     Plaintiff again requested that Perry make these issues known.

45.     Perry again refused.

46.     On December 13, 2017, Plaintiff found that nothing had been done to address her complaints.

47.     Plaintiff decided she needed to report the issues to a higher authority.

48.     Plaintiff contacted Human Resources and described the occurrence, the potential issues, and the need for the lock.

49.     The Human Resources representative told Plaintiff the department would

follow up on this to make sure it was addressed.

50.     Approximately 10 minutes after Plaintiff's complaint to Human Resources, Plaintiff received a call from Perry.

51.     Perry immediately asked Plaintiff: "Why did you contact HR?"

52.     Plaintiff attempted to explain, but Perry talked over her.

53.     Perry told Plaintiff that Plaintiff should not go "over her head" again "or else."

54.     Perry told Plaintiff: "I have things under control."

55.     Plaintiff apologized to Perry about contacting Human Resources.

56.     Plaintiff explained that she did not realize Perry was working on something to address the issue.

57.     Perry snapped back: "I'm not."

58.     Plaintiff did not know what to say, and Perry ended the call.

59.     A few weeks later, Plaintiff was called into a meeting with Human Resources representative Teal Goeller and JCDS Director of Day and Employment Services, Defendant Johnson.

60.     In that meeting Plaintiff was told that her overtime usage was "excessive."

61.     Plaintiff pointed out that she had been working at JCDS for over three years, and substantial overtime was part of the job.

62.     Plaintiff also noted that her supervisor, Perry, had signed off on all of Plaintiff's timecards showing Plaintiff's overtime hours.

63.     Plaintiff further pointed out that the only other individual in the same position as Plaintiff, Jo Duncan, had been using FMLA leave during 2017, which had also

contributed to Plaintiff working additional hours.

64.     As Plaintiff attempted to explain the work she had been doing to justify the overtime worked, Goeller and Defendant Johnson continually interrupted Plaintiff and kept her from speaking.

65.     Plaintiff repeatedly told both Goeller and Defendant Johnson that she needed the laptop computer Defendant County had issued to her to indicate what she was doing on any given day.

66.     Plaintiff offered to allow Goeller or Defendant Johnson to operate the computer while Plaintiff instructed the operator where to locate the pertinent data, but was rebuffed.

67.     Plaintiff was never given the opportunity to access this documentation from her computer to prove she had been working for all claimed hours.

68.     In fact, Plaintiff would never be allowed to access her computer again before being discharged.

69.     The following day, Plaintiff was placed on administrative leave.

70.     When Plaintiff was informed of this, she asked if she should get an attorney.

71.     The Human Resources representative mocked Plaintiff for asking this question.

72.     The representative remarked "Why should you? You aren't in any trouble here."

73.     Plaintiff was only interviewed for approximately 10 minutes over the next three weeks as an investigation was conducted.

74.     In that brief interview, Plaintiff again directed Defendant County to her work

computer.

75.     Plaintiff noted that the computer contained all the relevant information to support Plaintiff's use of overtime.

76.     Defendant County, through its agents, including Defendant Johnson, again denied Plaintiff access to her computer.

77.     Goeller contacted Plaintiff to request that Plaintiff attend a "meeting" on February 22, 2018.

78.     Goeller told Plaintiff that Defendant County had some "follow up questions" for Plaintiff.

79.     Goeller did not inform Plaintiff that a decision would be made on this date.

80.     On February 22, 2018, Plaintiff arrived for the "meeting."

81.     However, Plaintiff found that six individuals, including JCDS Deputy Director Defendant Fletcher, Perry, and Goeller, were present.

82.     Shortly after Plaintiff entered the room, Defendant Fletcher told Plaintiff: "I intend to separate you from employment with JCDS; convince me otherwise."

83.     Plaintiff realized that this was not a "meeting" for follow-up questions, but a hearing upon which her employment status would be decided.

84.     Plaintiff had gotten no advanced warning of this fact.

85.     Plaintiff again, asked for access to her work computer.

86.     Plaintiff again, explained that the computer held documents and data that would prove her explanations regarding the use of overtime.

87.     Plaintiff was again denied access to this evidence by Defendant County, acting through Defendant Fletcher.

88.     Defendant Fletcher informed Plaintiff that Defendant County had advised the District Attorney for Johnson County, Kansas to pursue criminal charges against Plaintiff for theft.

89.     Defendant Fletcher then presented Plaintiff with a written memorandum discharging Plaintiff.

90.     The memorandum had been written by Defendant Fletcher prior to hearing from Plaintiff on February 22, 2018.

91.     In the memorandum, it stated: "[Defendant County] has been unable to find any significant evidence of actual work product that you completed to demonstrate you were, in fact, working."

92.     Despite signing off on Plaintiff's overtime, Perry was not discharged.

93.     In fact, Perry participated in Plaintiff's discharge.

94.     Defendant Johnson had signed off on some of Plaintiff's overtime as well.

95.     Despite this, Defendant Johnson was not discharged.

96.     Plaintiff did not have access to her computer, so knew she would not have the ability to properly defend herself upon an appeal of the decision.

97.     Plaintiff applied for unemployment benefits, but was denied when Defendant County alleged that Plaintiff had committed theft by inflating overtime hours.

98.     Plaintiff began working at another job following her discharge from employment by Defendant County.

99.     On January 2, 2019, the District Attorney for Johnson County, Kansas ("DA") filed a criminal charge of theft against Plaintiff.

100.    As a result of this charge, Plaintiff was terminated from her replacement

employment.

101.    Plaintiff was arrested on January 2, 2019, and forced to post bond for her release.

102.    Plaintiff retained legal counsel to represent her in the criminal case.

103.    In the criminal case, Plaintiff's legal counsel requested access to Plaintiff's work computer and all data/documents contained therein.

104.    Plaintiff has a constitutional right to this information, as it would exonerate her. *Brady v. Maryland*, 373 U.S. 83 (1963).

105.    Plaintiff's legal counsel contacted the DA, through the attorney prosecuting Plaintiff's criminal case, and informed the attorney that the work computer would be extremely important.

106.    The DA's office sent an investigator, Jason Novotny, to review the computer's contents.

107.    However, it was discovered that the computer was believed to have been completely wiped.

108.    Plaintiff's legal counsel then subpoenaed Defendant County for access to the computer.

109.    Defendant County, though its IT department, stated that the computer had been reissued to another employee and that the computer had not been examined forensically in any way prior to being wiped.

110.    Defendant County, though its IT department, suggested that most of the data was saved to an external server owned by Defendant County.

111.    Novotny interviewed Mike Epperson, the Information Security and

Resilience Manager for Defendant County.

112.    Epperson stated that Defendant County's retention policy was for six months after an employee's discharge.

113.    Epperson stated that the computer had been "disabled" on March 19, 2018, well before the six month period.

114.    Further, no hold was placed on the data held by the computer.

115.    Plaintiff's legal counsel then subpoenaed Defendant County for access to the saved data from the server.

116.    Defendant County, through its legal counsel, stated *that none of the records from Plaintiff's computer could be located on the server*.

117.    Upon information and belief, this data was never saved to the server, but instead deleted well ahead of Defendant County's record retention policy.

118.    Additionally, many of the documents identified in the discharge report written by Defendant Fletcher have been identified as "un-locatable" by the DA's office.

119.    All actions or inactions of or by Defendant County occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT I - RETALIATION IN VIOLATION OF PUBLIC POLICY
### Against Defendant County

120.    Plaintiff made good-faith complaints to management members of Defendant County about the following concerns:

        a.    Neglect of residents who depended on staff of JCDS for support, in violation of the Adult Care Home Licensure Act (K.S.A. § 39-923) and civil rights of the

residents;

b.      Unsafe and unsecured storage of narcotic medications, in violation of the Controlled Substances Act (21 U.S.C., ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

c.      Missing narcotic medications, in violation of the Controlled Substances Act (21 U.S.C. ch. 13) and Kansas Uniform Controlled Substances Act (K.S.A. § 65-4139);

d.      Unsafe working conditions due to lack of locks on doors, in violation of the Occupational Safety and Health Act (29 U.S.C., ch. 15); and

e.      Inadequate protections for personal information protected by HIPAA, in violation of HIPAA and Health Information Technology for Economic and Clinical Health Act.

121.    The above laws each pertain to public health, safety, and the general welfare of the citizens of Kansas.

122.    Plaintiff made each of the above reports to supervisory employees of Defendant County, including Plaintiff's direct supervisor.

123.    When Plaintiff's direct supervisor failed to act on Plaintiff's complaint, Plaintiff went to a higher internal authority.

124.    Defendant County took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, making false allegations regarding Plaintiff's work, and opposing Plaintiff receiving unemployment benefits.

125.    Defendant County's adverse employment actions taken against Plaintiff were

each based upon, and directly related to, Plaintiff's complaints.

126.    Defendant County's adverse employment actions against Plaintiff violate public policy clearly declared by the Courts, the Kansas Legislature, and Congress.

127.    As a direct and proximate result of Defendant County's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, loss of subsequent employment, and will continue to suffer the same unless and until this Court grants relief.

128.    Defendant County acted toward Plaintiff with willful conduct, wanton conduct, or malice.

129.    Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT II - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
## FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant County

130.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

131.    Defendant Fletcher and Defendant Johnson were each involved in gathering information that was used to convince the District Attorney (DA) to pursue criminal charges against Plaintiff.

132.    Particularly, Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

133.   Defendant County, Defendant Fletcher, and Defendant Johnson all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

134.   Plaintiff directly told Defendant Fletcher and Defendant Johnson that the computer contained information that would prove what tasks Plaintiff was performing during overtime hours.

135.   Despite this knowledge, Defendant County, Defendant Fletcher, and Defendant Johnson each did nothing to preserve the data contained on the computer.

136.   Instead, Defendant County, Defendant Fletcher, and Defendant Johnson allowed for the data to be completely destroyed while the computer was under their collective control.

137.   Erasing the data from the computer was ostensibly done pursuant to a policy of Defendant County regarding deleting all data contained on computers of former employees of Defendant County.

138.   However, this policy was not followed, and the data was erased well before the dictated amount of time.

139.   Defendant Fletcher had been delegated final policymaking authority as to when to suspend Defendant County's policy of data deletion.

140.   Defendant Fletcher took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

141.   Defendant County, Defendant Fletcher, and Defendant Johnson took intentional actions and/or omissions while knowing that Plaintiff had indicated the data imperative to defend herself from false allegations of theft via overtime fraud was solely

located on the computer.

142.     Further, Defendant County, Defendant Fletcher, and Defendant Johnson indentified documents to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

143.     Defendant County did not retain these documents, despite requesting that criminal charges be brought against Plaintiff.

144.     This deliberate destruction of multiple pieces of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County, Defendant Fletcher, and Defendant Johnson.

145.     As a result of the destruction of evidence, Plaintiff's rights to Due Process of Law guaranteed by the Fifth and Fourteenth Amendments have been violated.

146.     Plaintiff has suffered injury due to this deprivation, in the form of increased legal fees, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

147.     Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County, Defendant Fletcher, and Defendant Johnson in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT III - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
## FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
## Against Defendant Johnson

148.     Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

149.     Defendant Johnson was involved in gathering information that was used to convince the District Attorney (DA) to pursue criminal charges against Plaintiff.

150.     Particularly, Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

151.     Defendant Johnson had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

152.     Plaintiff directly told Defendant Johnson that the computer contained information that would prove what tasks Plaintiff was performing during overtime hours.

153.     Despite this knowledge, Defendant Johnson did nothing to preserve the data contained on the computer.

154.     Instead, Defendant Johnson allowed for the data to be completely destroyed while under her control.

155.     Defendant Johnson took intentional actions and/or omissions while knowing that Plaintiff believed the data imperative to defend herself from false allegations of theft via overtime fraud was solely on the computer.

156.     This deliberate destruction of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County, Defendant Fletcher, and Defendant Johnson.

157.     As a result of the destruction of evidence, Plaintiff's rights to Due Process of

Law guaranteed by the Fifth and Fourteenth Amendments have been violated.

158.    Defendant Johnson took these actions under color of state law, which she possessed by virtue of her position with Defendant County.

159.    Plaintiff has suffered injury due to this deprivation, in the form of increased legal fees, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

160.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Johnson in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT IV - VIOLATION OF RIGHT TO DUE PROCESS OF LAW
### FIFTH AND FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983
### Against Defendant Fletcher

161.    Defendant County was involved in the investigational aspects of criminal charges brought against Plaintiff.

162.    Defendant Fletcher was involved in gathering information that was used to convince the District Attorney (DA) to pursue criminal charges against Plaintiff.

163.    Particularly, Defendant County requested that the DA file particular state law criminal charges against Plaintiff.

164.    Defendant County, Defendant Fletcher, and Defendant Johnson all had control of Plaintiff's former work computer at all times prior to turning the computer over to the DA.

165.    Plaintiff directly told Defendant Fletcher that the computer contained information that would prove what tasks Plaintiff was performing during overtime hours.

166.    Despite this knowledge, Defendant Fletcher did nothing to preserve the data contained on the computer.

167.    Defendant Fletcher took no steps to suspend Defendant County's policy of data deletion as it related to data on Plaintiff's former work computer.

168.    Instead, Defendant Fletcher allowed for the data to be completely destroyed.

169.    Defendant Fletcher took intentional actions and/or omissions while knowing that Plaintiff believed the data imperative to defend herself from false allegations of theft via overtime fraud was solely on the computer.

170.    Further, Defendant Fletcher indentified documents in the report he wrote to support Defendant County's conclusion that Plaintiff had inflated overtime in the report which Defendant County used to justify Plaintiff's discharge.

171.    Defendant County did not retain these documents, despite requesting that criminal charges be brought against Plaintiff.

172.    This deliberate destruction of evidence deprived Plaintiff of her ability to defend herself against false criminal charges that were brought at the request of Defendant County, Defendant Fletcher, and Defendant Johnson.

173.    As a result of the destruction of evidence, Plaintiff's rights to Due Process of Law guaranteed by the Fifth and Fourteenth Amendments have been violated.

174.    Defendant Fletcher took these actions under color of state law, which he possessed by virtue of his position with Defendant County.

175.    Plaintiff has suffered injury due to this deprivation, in the form of increased

legal fees, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, emotional distress, and deprivation of these rights.

176.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Fletcher in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT V - VIOLATION OF LIBERTY INTEREST VIA STIGMATIZATION FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 Against Defendant County

177.    Defendant County discharged Plaintiff from employment.

178.    The reason used to justify Plaintiff's discharge was an unfounded charge of dishonesty, in the form of allegations of criminal theft via overtime fraud.

179.    Defendant County, through Defendant Fletcher, publicly disclosed these allegations by requesting that criminal charges be filed.

180.    Such allegations were disclosed publicly with case no. 19CR00022, *State of Kansas v. Charmaine Elise Elven*.

181.    Such allegations were also publicized to the Kansas Department of Labor.

182.    These allegations of theft are false.

183.    These allegations are the type that may seriously damage Plaintiff's standing and associations in her community, thereby foreclosing Plaintiff's freedom to take advantage of future employment opportunities.

184.    Plaintiff was discharged as a direct result of her new employer learning of

these criminal charges.

185.    Plaintiff has suffered injury due to this deprivation of rights, in the form of legal fees, lost wages, emotional distress, and deprivation of these rights.

186.    Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant County in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT VI - VIOLATION OF LIBERTY INTEREST VIA STIGMATIZATION FOURTEENTH AMENDMENT, THROUGH 42 U.S.C. § 1983 Against Defendant Fletcher

187.    Defendant County discharged Plaintiff from employment.

188.    The reason used to justify Plaintiff's discharge was an unfounded charge of dishonesty, in the form of allegations of criminal theft via overtime fraud.

189.    Defendant Fletcher publicly disclosed these allegations by requesting that criminal charges be filed.

190.    Such allegations were disclosed publicly with case no. 19CR00022, *State of Kansas v. Charmaine Elise Elven.*

191.    Such allegations were also publicized to the Kansas Department of Labor.

192.    These allegations of theft are false.

193.    These allegations are the type that may seriously damage Plaintiff's standing and associations in her community, thereby foreclosing Plaintiff's freedom to take advantage of future employment opportunities.

194.   Plaintiff was discharged as a direct result of her new employer learning of these criminal charges.

195.   Plaintiff has suffered injury due to this deprivation of rights, in the form of legal fees, lost wages, emotional distress, and deprivation of these rights.

196.   Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendant Fletcher in an amount in excess of $75,000, for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury in the United States District Court for the District of Kansas, to be held at the Robert J. Dole Federal Courthouse in Kansas City, Kansas, on all accounts and allegations of wrongful conduct alleged in this Complaint.


Dated: February 21, 2020                             Respectfully submitted,

                                                         /s/ Daniel L. Doyle
                                                        Daniel L. Doyle, KS Bar No. 11260
                                                        Robert A. Bruce, KS Bar No. 28332
                                                        DOYLE & ASSOCIATES LLC
                                                        748 Ann Avenue
                                                        Kansas City, Kansas  66101
                                                        Telephone:  (913) 371-1930, ext. 109
                                                        Facsimile:  (913) 371-0147
                                                        d.doyle@ddoylelaw.com
                                                        r.bruce@ddoylelaw.com
                                                        ATTORNEYS FOR PLAINTIFF