**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CHARMAINE ELVEN, | |
| **Plaintiff,** | |
| v. | Case No. 20-2074-JAR-GEB |
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON, MATTHEW FLETCHER, and BETH JOHNSON, | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

Plaintiff Charmaine Elven alleges claims against her former employer, the Board of County Commissioners for the County of Johnson ("the County"), and County employees Matthew Fletcher and Beth Johnson, arising out of the termination of her employment. Plaintiff alleges federal claims under 42 U.S.C. § 1983 against all Defendants, and a state law claim for retaliation in violation of public policy against the County. Before the Court is Defendants' Motion to Dismiss (Doc. 12), seeking dismissal of all federal claims. The motion is fully briefed, and the Court is prepared to rule. For the reasons described more fully below, the Court grants Defendants' motion to dismiss.

I.      **Standards**

Defendants argue that the federal claims are not ripe for review, and thus not justiciable. Ripeness "present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute."[1] "A court lacking jurisdiction cannot render judgment but must dismiss the

---

[1] *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (citing *Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004)).

cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[2]
The "burden of establishing" a federal court's subject-matter jurisdiction "rests upon the party
asserting jurisdiction."[3]  Mere conclusory allegations of jurisdiction are not enough.[4]

      Defendants also argue for dismissal on the merits under Fed. R. Civ. P. 12(b)(6).  To
survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain factual
allegations that, assumed to be true, "raise a right to relief above the speculative level" and must
include "enough facts to state a claim for relief that is plausible on its face."[5]  In order to pass
muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this*
plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6]  The
plausibility standard does not require a showing of probability that a defendant has acted
unlawfully, but requires more than "a sheer possibility."[7]  "[M]ere 'labels and conclusions,' and
'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer
specific factual allegations to support each claim."[8]  Finally, the Court must accept the
nonmoving party's factual allegations as true and may not dismiss on the ground that it appears
unlikely the allegations can be proven.[9]

      The Supreme Court has explained the analysis as a two-step process.  For the purposes of

---

[2] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1152 (10th Cir. 2015) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[3] *Id.* at 1151.

[4] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[6] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[10]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[11]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

The trial court may take judicial notice of publicly-available court documents and matters of public record without converting a motion to dismiss for failure to state a claim into a motion for summary judgment, so long as those facts are not in dispute.[14]  "[T]he documents may only be considered to show their contents, not to prove the truth of the matters asserted therein."[15] The Court takes judicial notice of the documents attached to Defendants' memorandum in support of the motion to dismiss: Exhibit A, Supplement to Motion to Quash Subpoenas/Subpoenas Duces Tecum; and Exhibit B, Docket Sheet for Johnson County Case No. 10CR00022.[16]

## II.     Factual Allegations

---

[10] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[11] *Id.* at 679.

[12] *Id.*

[13] *Id.* at 678.

[14] *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[15] *Tal*, 453 F.3d at 1264 n.24 (internal citations and alterations omitted).

[16] Docs. 13-1, 13-2.

The following facts are either alleged in the Complaint and viewed in the light most favorable to Plaintiff, or are derived from judicially-noticed documents submitted by Defendants.

Plaintiff worked as a Community Employment Specialist for the County.  Between April 2015 and January 2018, she worked substantial overtime.  Plaintiff's supervisors, including Johnson, had to approve Plaintiff's hours worked.  At no time prior to January 31, 2018 did any supervisor—including Johnson—question Plaintiff's submitted time.  In late 2017, Plaintiff made several complaints regarding various issues pertaining to the public health, safety, and general welfare of citizens of the State of Kansas.  In January 2018, Johnson told Plaintiff that Plaintiff's use of overtime was being investigated by the County.

In an initial meeting on January 31, 2018, when Plaintiff was told of the investigation into her overtime usage, Plaintiff told Johnson that information on Plaintiff's work-issued laptop would show that she had worked all hours for which she was paid.  Johnson denied Plaintiff access to the computer, even to show Johnson how to find documents that would support her overtime hours.  The next day, Plaintiff was placed on administrative leave pending an investigation.  Plaintiff asked if she should get an attorney, and was mocked by a County representative, who stated: "Why should you? You aren't in any trouble here."[17]  During the investigation, Plaintiff was interviewed a second time for approximately ten minutes.  During this second interview, Plaintiff again told the County that she required access to her laptop to show that she had been working and exactly what she had done.  This request was denied again.

Plaintiff was told to report to a meeting on February 22, 2018, which she believed was for the purpose of gathering more information.  However, when Plaintiff arrived, she learned that she was being discharged.  Fletcher told Plaintiff: "I intend to separate you from employment

---

[17] Doc. 1 ¶ 70–72.

with [the County]; convince me otherwise."[18]  Plaintiff again explained that she needed access to her work computer and the documents stored therein.  Fletcher denied Plaintiff's request for the computer.  Fletcher told Plaintiff that the County would be requesting that the District Attorney ("D.A.") for Johnson County pursue criminal charges against Plaintiff.  Fletcher handed Plaintiff a memorandum which memorialized what had been said.  Plaintiff did not pursue any review of the decision; without access to her computer she believed she could not properly defend herself.

The County's retention policy for information on a work-issued laptop is six months from the date of discharge.  Plaintiff's computer was disabled on March 19, 2018, less than one month after her discharge.  Neither Johnson nor Fletcher nor any other County employee placed a hold on the data contained on the computer.  Ultimately, the data on the computer has been lost forever.

Defendants communicated the theft through overtime fraud allegations to the Johnson County D.A. and the Kansas Department of Labor ("KDOL").  Criminal charges for theft were filed against Plaintiff by the D.A. on January 2, 2019, causing Plaintiff to be discharged from her new employment.  Plaintiff's retained counsel in the criminal matter requested the contents of the computer from the D.A.  The D.A. found that the computer's contents had been wiped; the computer had not been forensically examined in any way prior to being wiped.  Additionally, the County could not locate several of the documents referenced in the termination memorandum drafted by Fletcher.

In the criminal case, the County filed a Motion to Quash Subpoenas and Subpoenas Duces Tecum that Plaintiff had directed to current and former County employees.  The court sustained in part the motion on December 13, 2019, and directed the County to provide the

---

[18] *Id.* ¶ 82.

parties in the criminal case with records responsive to certain numbered paragraphs in the subpoenas.  The County filed a supplement with the court, indicating that it had retrieved and was holding emails and documents that were responsive to the subpoena, and requested that the court order Plaintiff to pay the costs of reviewing and redacting the documents.  The matter was set for hearing on June 25, 2020; Defendants do not indicate in their July 6, 2020 reply brief whether this hearing proceeded or was continued.

## III.    Discussion

Plaintiff raises a state law claim for retaliation in violation of public policy against the County in Count I.  She also raises the following claims under 42 U.S.C. § 1983: Count II for violation of due process under the Fifth and Fourteenth Amendments against the County; Count III for violation of due process under the Fifth and Fourteenth Amendments against Johnson; Count IV for violation of due process under the Fifth and Fourteenth Amendments against Fletcher; Count V for violation of liberty interest stigmatization under the Fourteenth Amendment against the County; and Count VI for violation of liberty interest stigmatization under the Fourteenth Amendment against Fletcher.  Defendants' motion only challenges the § 1983 claims.  Defendants first argue that these claims are not ripe for review because they relate to a pending criminal case.  Next, Defendants argue that all of the § 1983 claims must be dismissed for failure to state a claim.

### A.    Ripeness

Defendants first argue that Counts II–IV, due process claims based on the County's destruction of Plaintiff's work computer, are not ripe for review because they are the subject of pending motions in the criminal case.  For a claim to be justiciable under Article III, "it must present a live controversy, ripe for determination, advanced in a 'clean-cut and concrete

form.'"[19]  It is a timing question—"*when* in time is it appropriate for a court to take up the

asserted claim."[20]  The ripeness inquiry evaluates (1) fitness of the issue for judicial resolution,

and (2) hardship to the parties of withholding judicial consideration.[21]

The Court finds that the due process claims asserted in Counts II–IV are not fit for

judicial resolution.  Plaintiff argues with no citation to authority that her claim was ripe "at the

moment that evidence was destroyed," which hindered her ability to defend herself in the

criminal case and raised the cost of her defense.[22]  But the Tenth Circuit has made clear that the

due process right implicated by destruction of exculpatory evidence is the right to a fair trial.[23]

Section 1983 claims alleging due process violations arising out of failure to preserve exculpatory

evidence in criminal cases "fall into two distinct categories."[24]

> In the first group of cases, all criminal charges were dismissed
> prior to trial.  Under such circumstances, courts have held
> universally that the right to a fair trial is not implicated and,
> therefore, no cause of action exists under § 1983.  In the second
> group of cases, convictions were obtained and affirmed on direct
> appeal, but were subsequently overturned by way of collateral
> proceedings.  In these cases, courts have permitted the exonerated
> defendant to pursue § 1983 claims based on the denial of a fair
> trial.[25]

Whether the County has destroyed exculpatory evidence may be the subject of motions practice

in the criminal case, although the Court does not have before it sufficient documentation of the

---

[19] *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)).

[20] *Id.* (quoting *ACORN v. City of Tulsa*, 835 F.2d 735, 738 (10th Cir. 1987) (emphasis in original)).

[21] *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990) (quoting *Abbott v. Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

[22] Doc. 19 at 7.

[23] *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999)

[24] *Id.*

[25] *Id.* (citations omitted).

motion to quash to determine whether and to what extent that issue has been or will be litigated. Regardless of that court's handling of the issue, it is undisputed that Plaintiff's criminal case is pending, so Plaintiff's right to a fair trial has not yet been implicated. Thus, Plaintiff's claims are premature and not fit for judicial resolution. Accordingly, such claims are not justiciable and Defendants' motion to dismiss Counts II–IV based on ripeness is granted.

Defendants also argue that the stigmatization claims in Counts V and VI are not ripe due to the pending criminal case. The Court disagrees. Plaintiff's stigmatization claims are tied not only to the criminal case, but also to publication of untrue statements to the KDOL. Plaintiff alleges that she was discharged from her subsequent employment as a result of Defendants' allegations of overtime fraud, which then led to the criminal charges. Thus, her alleged injury is not entirely dependent on the outcome of the criminal case. Accordingly, the Court proceeds to consider the merits of Plaintiff's stigmatization claims only.

**B.      Failure to State a Claim, Counts V–VI**

Plaintiff alleges Fourteenth Amendment claims against the County and Fletcher for violations of due process. Specifically, Plaintiff alleges a deprivation of her liberty interest in her good name and reputation when the County and Fletcher disclosed to the D.A. and the KDOL allegations that Plaintiff committed criminal theft through overtime fraud. To establish her claim, Plaintiff must demonstrate a protected property or liberty interest to which due process protections apply, and then the Court must ask whether Plaintiff was "afforded the appropriate level of process?"[26] To demonstrate a deprivation of liberty interest based on stigmatization, Plaintiff must show that Defendants' statements (1) impugned her good name, reputation, honor, or integrity; (2) were false; (3) occurred in the course of terminating her or foreclosed other

---

[26] *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019).

employment opportunities; and (4) were published.[27]  Defendants only challenge the fourth

element—publication.  They further argue that Defendants' statements are protected by the

litigation privilege and that Plaintiff's failure to request a name-clearing hearing is fatal to her

due process claim.  The Court addresses these arguments in turn.

### 1.      Liberty Interest: Publication and Litigation Privilege

Defendants first argue that Plaintiff cannot demonstrate a liberty interest deprivation

because intra-government dissemination does not constitute publication.  To be published, a

statement must be "made public."[28]  In the Tenth Circuit "'intra-government dissemination, by

itself, falls short of the Supreme Court's notion of publication' because such statements are not

'made public.'"[29]  Plaintiff argues that the statements Defendants made to the D.A. and the

KDOL were published because (1) she does not rely on these statements alone; and (2) the

communications are not intra-governmental because the County and Fletcher sought out the D.A.

in a separate unit of County government to request that charges be filed—acting more like

private citizens.

Plaintiff first argues that she does not rely on allegations of intra-governmental

dissemination alone to support the publication element of her claim.  But Plaintiff does not point

to any other specific allegations in the Complaint to support this argument.  She alleges in ¶ 88

that "Defendant Fletcher informed Plaintiff that Defendant County had advised the District

Attorney for Johnson County, Kansas to pursue criminal charges against Plaintiff for theft."  She

later alleges a criminal case was in fact filed and that "[a]s a result of this charge, Plaintiff was

---

[27] *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).

[28] *Bishop v. Wood*, 426 U.S. 341, 348 (1976).

[29] *Acorn v. LaBarge, WY*, 784 F. App'x 614, 619 (10th Cir. 2019) (quoting *Asbill v. Hous. Auth. of the Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984)).

terminated from her replacement employment."[30]  In support of the stigmatization claims,

Plaintiff alleges that the allegations of criminal threat were publicly disclosed "by requesting that

criminal charges be filed," that they were "disclosed publicly with case no. 19CR00022, *State of*

*Kansas v. Charmain Elise Elven*," and that they "were also publicized to the Kansas Department

of Labor."[31]

There are no facts alleged in the Complaint that create a reasonable inference that

Defendants disclosed allegations of theft other than through recommending charges to the D.A.

and reporting the allegations to the KDOL.  The criminal charge itself was filed by the D.A., a

non-party to this action.  The cases relied on by Plaintiff are inapposite because they deal with

intra-governmental dissemination coupled with rumors of criminal misconduct,[32] or discussion

of allegations at a public board meeting.[33]  No similar conduct or publication is alleged here.

The meetings Plaintiff had with Defendants were private, and although Defendants presented her

with a memorandum detailing their termination decision, there are no allegations that this

memorandum was made public.  Accordingly, because Plaintiff relies on intra-governmental

dissemination without more, she fails to allege sufficient facts to support the publication element

of this due process claim.

Plaintiff next suggests that Defendants' report to the D.A. was akin to a private citizen

requesting that charges be filed because they were acting through a separate unit of county

government and thus not conducting a government function when making the report.  Under

---

[30] Doc. 1 ¶ 100.

[31] *Id.* ¶¶ 179–81.

[32] *Eames v. City of Logan, Utah*, 762 F.2d 83, 85 (10th Cir. 1985) ("A great deal of publicity surrounded plaintiff's suspension and termination, including rumors of criminal misconduct.").

[33] *McGhee v. Draper*, 564 F.2d 019, 910 (10th Cir. 1977) (finding publication where stigmatizing statements about teacher were made at public school board meeting and included in minutes which were duplicated and made public).

Tenth Circuit law, intra-government dissemination can occur between the same units of government, or across government units.[34]  To the extent Plaintiff alleges publication by Fletcher and the County to the D.A., it is a communication between the same units of government, which the Tenth Circuit has found can be an intra-government statement.[35]  Similarly, the statement alleged to have been made by the County and Fletcher to the KDOL is an intra-government dissemination.  As the Tenth Circuit recently explained, "important overlapping interests often exist between municipalities and state agencies."[36]  Here, the KDOL has an interest in being notified of the basis of a Kansas employee's termination.  The Court agrees with Defendants that the statements alleged in the Complaint are not public, and therefore were not published as required to support Plaintiff's claim that she was deprived of her liberty interest in her good name and reputation.

Defendants also argue that the statements alleged in the Complaint are subject to the litigation privilege under Kansas law.  But neither party discusses how or why this Kansas law doctrine applies to the federal civil rights claims in this case.  Moreover, although that litigation privilege may apply to statements "published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open court," it does not extend to statements made outside of court.[37]  The Court cannot find that the litigation privilege applies based on the limited argument provided by the parties on this motion.  Nonetheless, because Plaintiff's allegations on the publication element of her due process claim fall short, she fails to state a claim upon which relief may be granted.

---

[34] *Acorn*, 784 F. App'x at 619–20 (collecting cases).

[35] *See Ellison v. Roosevelt Cty. Bd. of Cty. Comm'rs*, 700 F. App'x 823, 832 (10th Cir. 2017); *Lollis v. City of Eufaula*, 249 F. App'x 20, 25 (10th Cir. 2007).

[36] *Acorn*, 784 F. App'x at 619.

[37] *Clear Water Truck Co. v. M. Bruenger & Co.*, 519 P.2d 682, 685 (Kan. 1974).

### 3.     Opportunity for Name-Clearing Hearing

Assuming, *arguendo*, that Plaintiff was able to demonstrate that she was deprived of a liberty interest as set forth above, the second step of the due process analysis requires the Court to determine whether the deprivation was without due process.[38]  When a Plaintiff's liberty interest is infringed, she is "entitled to a name-clearing hearing to prove the falsity of the defamatory information."[39]  Such a hearing "gives the plaintiff an opportunity to hear and answer firsthand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation."[40]  The hearing must conform to the requirements of the Due Process Clause.[41]  To the extent these allegations go to trial in the criminal case, such trial would satisfy due process.[42]

Plaintiff concedes in the Complaint that she did not seek review of the County's decision to terminate her, and maintains that a hearing would have been futile without access to her computer.  Moreover, Plaintiff's Complaint does not request or suggest that she is entitled to a name-clearing hearing.  Instead, Plaintiff's prayer for relief on these claims is limited to compensatory damages, attorneys' fees, and costs.  Defendants argue that because Plaintiff had and continues to have an opportunity for a name-clearing hearing, she has been afforded due process and her claim must fail.  The Court disagrees.  Defendants do not claim that Plaintiff waived her right to a due process hearing, and the Tenth Circuit has previously held that a plaintiff's "failure to earlier request a name-clearing hearing does not defeat [her] claim.  [She]

---

[38] *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014).

[39] *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019).

[40] *McDonald*, 769 F.3d at 1213 (quoting *Patterson v. City of Utica*, 370 F.3d 322, 335 (2d Cir. 2004)).

[41] *Id.* (quoting *Patterson*, 370 F.3d at 336).

[42] *Id.* at 1214 (collecting cases).

may still be entitled to a hearing if [s]he can prove at trial that [her] liberty interest was indeed violated."[43]  Moreover, Defendants do not claim that they afforded Plaintiff the process that was due.  If Plaintiff could establish a deprivation of her liberty interest in her good name and reputation, the Court would consider the relevant factors under *Mathews v. Eldridge*,[44] factors neither party discusses in their briefs.

In sum, although the Court is not persuaded by Defendants' other grounds for dismissal on Counts V and VI, the Court grants Defendants' motion to dismiss on the publication element of those due process claims and, thus, grants the motion under Rule 12(b)(6).  Therefore, the Court need not consider the individual Defendants' alternative argument that they are entitled to qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 12) is **granted**.  Counts II–IV are dismissed without prejudice; Counts V and VI are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 22, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[43] *Eames v. City of Logan, Utah*, 762 F.2d 83, 86 (10th Cir. 1985).

[44] 424 U.S. 319, 333 (1976).